## W. H. FITZGERALD ET AL. v. M. C. REES.

1. *Homestead. Partly without a town. Single tract.*
    The homestead, exempted under § 1249, code 1880, to the householder having a family, may consist of land lying partly within and partly without a town, if all comprises one tract.

2. *Statutes. Construction thereof.*
    While the general rule is that statutes should be so construed as to give some meaning to every provision, it is not permissible to absorb the statute in the rule, or to overturn the legislative will. Courts should look at the statute from every point of view ; the collocation of words and sentences should be changed, if necessary, and the general purpose and history of the legislation on the subject should be considered in the effort to ascertain the legislative intent.

FROM the circuit court of the first district of Yalobusha county. HON. WM. M. ROGERS, Judge.

The facts are sufficiently stated in the opinion.

*George H. Lester*, for appellants.

The rights of the parties in this case must be determined by the construction given to §§ 1248–49 of the code of 1880. Can the head of a family living in an incorporated town, and owning adjoining land outside of town, extend his homestead so as to embrace

both tracts, that in town and that without, the two together not exceeding 160 acres, nor in value $2000? In other words, can the exemptionist take under both of the above sections of the code, or must he take under the one or the other, as he may happen to live in town or in the country?

These sections must be so construed as to give effect to both, and the first thing that arrests attention is the marked difference in their phraseology. The first provides for every citizen of the state who is a householder and has a family at home, to consist of not more than 160 acres of land, worth not more than $2000; the other exempts to every person who is a householder and has a family, and who resides in any city, town, or village, the land and building owned and occupied as a residence by such person (clearly meaning the land and building in the city, town or village), as contradistinguished from other lands of such persons lying outside of the corporate limits.

The first imposes two limitations: (1) it must not exceed in quantity 160 acres; and (2) it must not exceed $2000 in value, while the second limits the value to $2000, but imposes no limitations as to the quantity or number of acres, except that it must be the land and building occupied as a residence.

A comparison and careful analysis of the two sections lead to the conclusion that in their adoption the legislature intended to provide and did make provision for two classes: (1) for the farmer population who live in the country and till the soil, and (2) for those who live in towns and support themselves and families by other occupations and pursuits than farming. To the latter class is given, in addition to the homestead, the right to elect what personal property shall be exempt to them. The rural homesteader must take such personal property as is given him by § 1244, but his more fastidious neighbor in town may, if he so elects, take a barrel of whiskey. *Bernheim* v. *Andrews*, 65 Miss. 28.

A person cannot blend the two sections and take under both. See *Baldwin* v. *Tillery*, 62 Miss. 380.

Otherwise, why did the legislature take the time and trouble to enact § 1249? The answer is that the homestead secured by § 1248

was not suited to the conditions of families in towns, the character of the homestead being distinct. Thompson on Homesteads and Exemptions, § 160.

I submit the two statutes should be construed so as to give effect to every provision.

*R. H. Golladay*, for appellee.

If the homestead claim is within both limitations, that is as to value and as to the number of acres, it matters nothing that the property is wholly within or wholly without, or partly within and partly without the corporate limits of a town. If the tract consists of 160 acres, and lies within the corporate limits, and together with improvements does not exceed $2000 in value, it is exempt. If the corporate limits be changed and a part of 160 acres thereby put outside such limits, is such part subjected to debt? Is a homestead exemption subject to such capricious changes? Can the right depend upon such fortuitous facts? We know of towns whose corporate limits have been several times changed. Surely the homestead rights do not fluctuate with the corporate limits. The larger part of appellee's land, on which he is dwelling, is out of the corporation, his occupation is the cultivation of the land on which is his home; the whole does not exceed $2000 in value, nor 160 acres in quantity, and is a solid body.

Nothing in the law imposes the condition that the land must be wholly within or wholly without the corporate limits, where all the conditions exist.

COOPER, J., delivered the opinion of the court.

Appellant, a judgment creditor of appellee, caused an execution on his judgment to be levied upon certain lands of appellee, and at the execution sale he became the purchaser. This is an action of ejectment to recover the land so sold. The appellee defended upon the ground that the land in controversy was a part of his homestead and exempt from sale under execution. The single question presented is whether the land was a part of the homestead. The facts are not controverted, and the question is purely one of law. The residence of appellee is located within the corporate limits of

the town of Oakland. The land on which it is situated is less in
quantity than one hundred and sixty acres, and less in value than
two thousand dollars. Appellee devotes his land to agriculture,
and the whole comprises one place. While the residence is within
the corporate limits of the town, all of the land except fifteen or
twenty acres is without such limits. The question then is, whether
the homestead exempt by law may be one located partly within and
partly without an incorporated town. It is determinable by a
construction of sections 1248 and 1249 of the code of 1880, which
are as follows:—

"Section 1248. Every citizen of this state, male or female, being
a householder, and having a family, shall be entitled to hold exempt
from seizure or sale under any execution or attachment the land and
buildings owned and occupied as a residence by such debtor; pro-
vided the quantity of land shall not exceed one hundred and sixty
acres, nor the value thereof, inclusive of improvements, the sum of
two thousand dollars.

"Section 1249. Every person being a householder, and having a
family, residing in any city, town, or village, shall be entitled to
hold exempt from seizure or sale under any execution or attachment
the land and buildings owned and occupied as a residence by such
debtor, not to exceed in value two thousand dollars, and personal
property to be selected by him, not to exceed in value two hundred
and fifty dollars, or the articles specified in the first section of this
act."

The articles specified by the first section of the act are those that
are exempt to all persons, those exempt to persons following par-
ticular callings, and some articles exempt to heads of families. The
argument of appellant's counsel is this: By § 1248, there is exempt
to every citizen being a householder and the head of a family, the
land and buildings owned and occupied as a homestead, provided it
does not exceed in quantity one hundred and sixty acres, nor in
value two thousand dollars. Unless, therefore, § 1249 was intended
to limit the urban exemptionist to the limits of the town, that sec-
tion, it is said, has no meaning as applied to homesteads, and since
it is the duty of the court to construe statutes as to give some

meaning to every provision, § 1249 should be held to confine the urban exemptionist to the corporate limits of the town.

We recognize the rule appealed to as valuable in aiding the court to discover the legislative purpose, which is the paramount end of construction, but it is not permissible to absorb the statute in the rule, nor to overturn the legislative will, that the rule may live. It is our duty to look at the statute from its four corners; to change the collocation of words and sentences if necessary; to consider the general purpose, if that be clear; to look to the history of legislation on the subject, and if, within the words of the statute so considered the intent can be discovered, to give effect to it.

If we consider § 1249 alone there is nothing in it indicating the intention of the legislature to confine the homestead to any merely imaginative line. The paramount purpose disclosed is to exempt the "land and buildings owned and occupied by the debtor as a residence," provided the same does not exceed in value the sum of two thousand dollars. The statute does not say that the land shall lie wholly within the village or town. Every condition required by the section is disclosed by the facts of this case. The appellee is a citizen and householder, and has a family; he owns and occupies the land and buildings thereon as a residence, and the value thereof does not exceed two thousand dollars.

The conclusion that it was intended to restrict the homestead to the limits of the corporation is inferentially drawn, because it is said if such purpose be not found this section need not have been enacted, since under the preceding one the exemption might have been claimed. But a mere transposition of the sections would answer this objection. So transposed and read, it would appear that the legislature, having by one section provided for urban exemptionists, turned its attention to the cases of those living in the country, and as to these added another limitation, viz., that the area should not exceed one hundred and sixty acres. We may fairly suppose it to have been assumed that the home in a town or village reaching in value two thousand dollars would not exceed in area one hundred and sixty acres, while in the country the limitation of

value might include a greater quantity of land than it was thought desirable to exempt.

When we look to the history of legislation on the subject of exemptions, it is at once perceivable how the two sections came into existence.

By the code of 1857, art. 281, page 529, there was one provision, applicable alike to persons living in towns and in the country. The limitation was that the quantity should not exceed eighty acres, nor the value of fifteen hundred dollars. By the act of November 28, 1865 (Acts of 1865, page 137), there was exempted to the rural exemptionist two hundred and forty acres of land, regardless of value, and to the urban exemptionist real and personal property to the value of four thousand dollars. By the act of July 25, 1870 (Acts, page 98), there was exempted to the ruralist eighty acres of land, regardless of value, and to those living in a city, town, or village "two thousand dollars worth of real property, comprising the proper homestead and other buildings connected therewith." In the codification of 1871, the limit of valuation, theretofore imposed only on homesteads in cities, towns, or villages, was applied also to the rural homestead. The attention of the legislature and the codifiers was evidently directed to the purpose of changing the law in reference to the rural homestead, by adding a limitation of value. No change whatever was made of the homestead in cities, towns, or villages, and it is not, in the absence of clear evidence of such purpose, permissible to imply the intent to make such change, from the mere fact that a new limitation was imposed on another character of homesteads.

We are therefore of opinion that the appellee's homestead was not limited by the corporate lines of the village in which his residence is located.

*Affirmed.*